IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH Jenkinschris770@gmail.comTHAT IS STORED AT PREMISES CONTROLLED BY Google LLC. | Case No. 1:19-MJ-155 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Gregory W Schultz, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with Google email (Gmail) accounts: jenkinschris770@gmail.com, which are stored at premises controlled by Google LLC, an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Senior Special Agent with the Tennessee Valley Authority (TVA), Office of the Inspector General (OIG) and have been since March of 2013. Further, I was previously a Special Agent with the Diplomatic Security Service (DSS) from 2010 through March 2013 and previously a Forensic Accountant with the Federal Bureau of Investigation (FBI). I am currently assigned to the TVA OIG Office located in Chattanooga, TN and my duties include proactively

identifying and investigating fraud schemes and/or corrupt activities that pose significant risk and major financial impact to TVA, a U.S. Government corporation.

3. I have completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC), Glynco, Georgia, the DSS Special Agent Training Course in Washington, DC and the Air Force Office of Special Investigations (AFOSI) basic special agent training course. My training comprised several investigative courses specifically dealing with financial crimes and related fraud schemes to include training in the enforcement of laws pertaining to financial fraud, conflict of interest, and public corruption crimes as found in Title 18 of the United States Code.

4. I have been a Certified Fraud Examiner (CFE) since February of 2010; and, as such, I am required to maintain my certification through annual fraud-related training and coursework.

5. The following information is based on my own personal observations and knowledge, as well as information provided from documents and sources noted herein. This affidavit does not contain all of the information known to law enforcement regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 USC § 1031: Major Fraud against the United States, Title 18 USC § 1343: Fraud By Wire, and Title 18 USC § 371: Conspiracy to commit offense or to defraud United States have been committed by Christopher James Jenkins (jenkinschris770@gmail.com) in connection with his employment with the Tennessee Valley Authority (TVA) as a principal project manager. There is also probable cause to search the

information described in Attachment A for emails related to the initiation and proliferation of these crimes further described in Attachment B.

## PROBABLE CAUSE CONCERNING MAJOR FRAUD

7. James C. Jenkins was employed as a TVA Project Manager from May 23, 2011 to February 24, 2017. James C. Jenkins' TVA official email address was JcJenkins@tva.gov. Prior to working at TVA, Jenkins was a partner in and/or owner of Miller Electric Inc. (MEC), Facilities Technology Alliance (FTA), and Facilities Technology Solutions (FTS).

8. Emails, records, interviews and documents gathered during the course of the investigation indicate that while working as a TVA project manager, Jenkins steered contracts and purchase orders to, and approved the payment of invoices for, businesses in which he had a personal interest or from which he would receive a financial benefit.

9. In 2011, Enerfab Inc., headquartered in Cincinnati, Ohio, considered purchasing Miller Electric Inc., where it appears that Jenkins had an ongoing financial interest. While working as a project manager at TVA, Jenkins awarded and approved invoices and steered TVA contracts to Enerfab, while brokering the purchase of Miller Electric Inc., to personally and financially benefit himself.

10. Facilities Technology Solutions, (FTS) is a limited liability corporation headquartered in Chattanooga, Tennessee, owned by Chris Jenkins, Gail Jenkins, (Chris Jenkins's spouse, hereafter "Gail"), and John Pemberton Guerry, also known as Pem Guerry. Records indicate that as a result of FTS's operations and a commercial debt, Chris and Gail Jenkins owed Guerry hundreds of thousands of dollars. Jenkins used his position at TVA to reduce his personal debt by awarding and steering TVA contracts to Signix, Inc., a corporation owned and controlled by Guerry.

11. On Oct 24, 2016, an email was sent from Jcjenkins@tva.gov to jenkinschris770@gmail.com. The forwarded email contains an earlier email dated Sept 12, 2011 from Jenkins to Guerry with the subject "Any Update with Miller?" Jenkins is a partial owner of a company named Facility Technology Solutions (FTS), and in the email he (Jenkins) claims to owe Pem Guerry $129,060, after subtracting payments made to "Signix", among other items. The email indicates a meeting was to take place between McKendree Miller, a.k.a. Ken Miller, (President of Miller Electric Inc.) and the Enerfab Chief Executive Officer (CEO) in Cincinnati on September 21, 2011. Jenkins indicates in this email, "The deal with him [Jenkins] and Miller will be finalized as soon as they [Miller Electric] gets an inked deal with them [Enerfab]".

12. On Aug 30, 2011, an email was sent from Jcjenkins@tva.gov to Ken Miller, and tells him that he [Jenkins] got the main contracts executed today for Enerfab. I reviewed the contracts TVA had with Enerfab Inc., and TVA began doing business for the first time with Enerfab in August 2011.

13. On May 9, 2013, TVA awarded a purchase order (PO) contract to Signix Inc. for a total of $23,240.25. The PO was awarded to Signix for a contract to supply TVA with "My Dox" licenses. Signix Inc., 1203 Carter Street, Chattanooga, TN 37402 is owned by Guerry. Guerry is listed on Signix Inc. invoice number TVA-0413.

14. On Jan 6, 2017, an email was sent from Jcjenkins@tva.gov to jenkinschris770@gmail.com. The email contains an earlier email dated May 7, 2013, from Jenkins to Tiffany Scott (a TVA Procurement Agent) wherein Jenkins told Scott to contact Guerry for a project kick-off regarding the Signix contract.

15. On Jan 6, 2017, an email was sent from Jcjenkins@tva.gov to jenkinschris770@gmail.com. The email contains an earlier email dated April 17, 2013 from

Jenkins to Guerry in which Jenkins tells Guerry, "Are you kidding!!!! No way I can approve this invoice!!!" The email string contains an approval confirmation, signed by Chris Jenkins, generated from TVA's internal invoice system (Maximo) for Signix Inc., invoice # 2023275.

16. I reviewed a report from the TVA invoice system (Maximo) containing a listing of invoices which Chris Jenkins approved. Jenkins approved Signix Inc, Invoices 2023275 and 2109709; and TVA awarded paid Signix Inc. a total of $23,475.

17. On Dec 27, 2016, an email was sent from Jcjenkins@tva.gov to jenkinschris770@gmail.com. The email contains an earlier email dated October 24, 2016 from Jcjenkins@tva.gov to jenkinschris770@gmail.com, and contains an excel spreadsheet attachment titled "October 26, 2016 Notes". The excel spreadsheet appears to be an accounting of monies owed to Guerry by Jenkins, and under the column heading, "Paid by Chris and Gail Jenkins", there is an entry reducing the debt owed to Guerry by $24,000, for payments made by TVA for the Signix purchase order. This appears to indicate that Jenkins reduced his personal debt to Guerry by using his position at TVA to approve the Signix invoices.

18. On January 16, 2017, an email was sent from Jcjenkins@tva.gov to jenkinschris770@gmail.com. This email contains an earlier email dated November 23, 2011 from Guerry to Jenkins stating, "I am optimistic that we have come up with a plan that could save about $100,000 in taxes for me (all of which would be credited against your debt to me). Jenkins responds, "TVA Attorneys, Ken Miller (Miller Electric Inc.) and Bowen met yesterday in an attempt to reach some sort of settlement, looking optimistic. Enerfab and Miller will have their agreement completed by the first week of December. This will allow Miller to move forward and have some relief while collecting Bowen and EPB monies, Enerfab and their team have been instrumental in these negotiations moving forward at a much quicker pace."

19. I reviewed a report from the TVA invoice system (Maximo) containing a listing of Enerfab Inc. invoices James C. Jenkins approved. Jenkins approved 21 separate invoices for Enerfab Inc. from September 2011 – June 2012, totaling $10,011,980.

20. As a TVA project manager, Chris Jenkins was required to fill out a financial disclosure form, OGE form 450. On Feb 20, 2012, in response to the question; "I have reportable liabilities (debts) for myself, my spouse or my dependent children", Jenkins answered "no". On the question; "I have reportable assets or sources of income for myself, my spouse or my dependent children", Jenkins answered, "yes". Jenkins listed the following under the reportable assets section: "Miller Electric Contractors Inc., Shareholder Agreement, Stock sale back to the company". The TVA ethics department asked Jenkins for clarification. On May 9, 2012, Jenkins emailed the TVA ethics department and stated that he no longer holds stock in Miller Electric, and the retirement plan offered to all Miller employees ceased when he left the company. Jenkins states that Miller Electric had two accounts receivable that affected his net value of Miller Stock, but the accounts receivable were closed this spring (2012) "without Miller receiving additional payments that would affect my purchase price".

21. I reviewed a purchase agreement, signed on January 10, 2011, between Chris Jenkins, Ken Miller, MJW Partnership and Chuck Wallen, who is Miller Electric Inc.'s Chief Financial Officer (CFO). Jenkins sold his 24.5% ownership interest in Miller Electric Inc. for $91,000 in cash and the cancellation of two separate debts; $150,000 and $22,000.

22. On September 20, 2011, Chuck Wallen, using email address chuck@millerelectric.net , forwarded an email to Jenkins, at jcjenkins@tva.gov , Subject: Addendum to Purchase Agreement, and stated "Chris [Jenkins] will additionally receive the sum of $12,000 a quarter as consideration for redemption of his stock in Miller Electric Contractors

Inc., and his partnership interest in MJW General Partnership. Jenkins then sent an email to Gail Jenkins, at gjenkins33@comcast.net, stating " The $91K is for payments to Guerry" and "The amendment we have discussed is to go from $12,000 per quarter to $1,000 per week which works out to $4,000 more per year"

23. On Sept 22, 2011, an email is sent from jcjenkins@tva.gov to Gail Jenkins at gjenkins33@comcast.net, discussing the addendum to the Miller Electric purchase agreement. Gail Jenkins then emailed back, "Your big card of holding TVA work over them [Miller Electric] doesn't work as they now have their own contract with TVA."

24. Facilities Technology Alliance Inc. (FTA) is a limited liability corporation headquartered at 613 Shallowford Road, Chattanooga, Tennessee. I reviewed the State of Tennessee articles of organization for FTA, and noted that Chris Jenkins is listed as a founding member, as is Miller Electric Inc. (which is also located at 613 Shallowford Road, Chattanooga, Tennessee). Chris Jenkins did not list his ownership interest in FTA when he submitted the TVA Financial Disclosure Form, OGE 450.

25. I reviewed bank statements and signature cards for the FSG bank account of FTA, 613 Shallowford Road, Chattanooga, TN. McKendree E. Miller, Charles S. Wallen and Chris Jenkins are identified as the authorized signors on the FTA account.

26. I reviewed a report from TVA invoice system containing a listing of approximately $63M for the period, 2011-2019 paid to FTA.

27. I reviewed a report from the TVA invoice system (Maximo) containing a listing of the invoices approved by Jenkins. On February 22, 2012, Jenkins approved FTA Invoice #1344467; in the amount of $88,441.68. McKendree (Ken) Miller is listed as the contact on this report.

28. I interviewed McKendree (Ken) Miller, who stated that while Jenkins was working for TVA as a project manager he was "using his connections at TVA" to get Enerfab Inc. to purchase Miller Electric. Jenkins's value to Enerfab and Miller Electric Inc., was his (Jenkins) employment with TVA. Jenkins made it known he could "get work for TVA". McKendree Miller stated that Facilities Technologies Solutions (FTS) was a failed joint venture between Jenkins and Guerry.

29. I reviewed reports from the TVA contract management system, containing the total dollars paid to the following contractor(s):

   (a) **Facilities Technologies Alliance (FTA): $101,610,889 (2004-2019)**
   (b) **Miller Electric Inc.: $6,029,034 (2009-2018)**
   (c) **Enerfab Inc.: $33,164,016 (2011-2018)**

30. In summary, there is probable cause to believe that James Christopher Jenkins used the aforementioned email addresses to communicate and steer TVA purchase orders and invoices for his personal financial benefit, by communicating false and misleading documentation to conceal his personal ownership interest in companies to which TVA awarded contracts. Moreover, Jenkins failed to fully and accurately disclose to TVA his assets and liabilities on OGE form 450, related to Facilities Technology Solutions, Miller Electric Contractors Inc., Signix Inc., Enerfab Inc., and Facilities Technology Alliance.

## BACKGROUND CONCERNING E-MAIL

31. In my training and experience, I have learned that Google LLC provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. Google LLC allows subscribers to obtain e-mail accounts at the domain name "gmail.com", like the e-mail account[s] listed in Attachment A. Subscribers obtain an account by registering with Google LLC. During the registration process, Google LLC asks subscribers to provide basic personal information. Therefore, the computers of Google LLC are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google LLC subscribers) and information concerning subscribers and their use of Google LLC services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

32. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

33. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

34. In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google LLC who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

36. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*[signature]*
Gregory W. Schultz
Senior Special Agent
TVA – Office of the Inspector General

Subscribed and sworn to before me on \_\_\_\_October 25\_\_\_\_, 2019

*[signature]*
Honorable Christopher H. Steger
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The email account to be searched are known active Gmail accounts assigned to James Christopher Jenkins: jenkinschris770@gmail.com.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Gmail LLC. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from January of 2011 through present date:

a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of Title 18 USC § 1031: Major Fraud against the United States, Title 18 USC § 1343: Fraud By Wire, and Title 18 USC § 371, those violations involving James C. Jenkins and Gail Jenkins, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Discussions regarding payments and contracts made between Facilities Technology Alliance, Facilities Technology Solutions, Signix, Miller Electric, Enerfab, Bowen, and the Tennessee Valley Authority (TVA).
b. Contact information on individuals related to the discussions discovered above;
c. Financial discussions or records regarding Facility Technology Alliance, Facilities Technology Solutions, Signix, Miller Electric, Enerfab, Bowen and the TVA or associated partners, suppliers, contractors or sub-contractors;
d. Discussions regarding financial relationships between Facility Technology Alliance, Facilities Technology Solutions, Signix, Miller Electric, Enerfab, Bowen and the TVA, and any and all others involved with Facility Technology Alliance, Facilities Technology Solutions, Signix, Miller Electric, Enerfab, Bowen and the TVA, known and unknown;
e. Information concerning individuals associated with Facility Technology Alliance, Facilities Technology Solutions, Signix, Miller Electric, Enerfab, Bowen and the TVA and any affiliated entities, to include their identities and/or whereabouts.